**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Lisa Stolarski,

                     Plaintiff,

v.

City of Highland Park, Highland
Park City Council, Glenda
McDonald, and Eleanor
Williamson,

                     Defendants.

Case No. 24-cv-12827

Judith E. Levy
United States District Judge

Mag. Judge David R. Grand

_____/

**OPINION AND ORDER OVERRULING DEFENDANTS'
OBJECTIONS [28] AND ADOPTING THE MAGISTRATE
JUDGE'S RECOMMENDATION [25] TO DENY
DEFENDANTS' MOTION TO DISMISS [16]**

On January 31, 2025, Plaintiff Lisa Stolarski filed an Amended

Complaint against four Defendants: The City of Highland Park,

Michigan, the Highland Park City Council, Glenda McDonald, who is

sued in her official and individual capacities as the City's Mayor, and

Eleanor Williamson, who is sued in her official and unofficial capacities

as the City's Finance Director. (ECF No. 10.) On March 4, 2025,

Defendants filed a motion to dismiss the Amended Complaint under Rule

12(b)(6). (ECF No. 16.) On June 3, 2025, Chief Magistrate Judge David R. Grand issued a Report and Recommendation ("R&R") recommending that the Court deny Defendants' motion. (ECF No. 25.) The R&R cited the reasons that Judge Grand stated on the record during a hearing on June 2, 2025. (*See id.*; ECF No. 27 (transcript of 6/2/25 hearing).) Defendants filed five objections to the R&R. (ECF No. 28.)

For the reasons set forth below, Defendants' objections (ECF No. 28) are OVERRULED. The Court ADOPTS Judge Grand's recommendation (ECF No. 25) to deny Defendants' motion to dismiss for the reasons Judge Grand set forth on the record at the June 2, 2025 hearing (*see* ECF No. 27) along with the reasons stated below.

## I.   Background

### A.   Plaintiff's Allegations

On February 1, 2024, a Wayne County Circuit Judge issued an order that removed Janice Taylor-Bibbs from the elected office of Treasurer of the City of Highland Park, Michigan. (ECF No. 10, PageID.126, ¶ 14; *see also* ECF No. 1-2, PageID.20.)[1] The court's order

---

[1] According to the court's order, Ms. Taylor-Bibbs was ineligible to serve as Treasurer because she was "in default to the Defendant City of Highland Park in the amount of $90,619.88." (ECF No. 1-2, PageID.20.)

directed the City to "proceed with taking the necessary steps to fill the vacancy in the elected office of City Treasurer." (ECF No. 1-2, PageID.20.)

Plaintiff petitioned to be appointed as the City's Treasurer. (ECF No. 10, PageID.126, ¶ 16.) "During the application and vetting process, Plaintiff . . . spoke openly against" Defendants McDonald and Williamson and certain members of the Highland Park City Council. (*Id.* at PageID.126, ¶ 18.) She also "openly criticized McDonald, Williamson, and "at least two members" of the City Counsel "for being unethical and[,] in certain respects, corrupt." (*Id.* at PageID.127, ¶ 19.)

Plaintiff alleges that McDonald, Williamson, and "at least two members" of the City Counsel "publicly opposed" Plaintiff's candidacy for the Treasurer position. (*Id.* at PageID.127, ¶ 20.) They "even accused Plaintiff . . . of conspiring with well-known community activist Robert Davis to have the former City Treasurer . . . removed from office." (*Id.*)

Despite alleged "vehement opposition" from these individuals, Plaintiff was appointed to serve as the Treasurer of Highland Park by a 3-to-2 City Council vote on March 18, 2024. (*Id.* at PageID.127, ¶ 21.) The Council's resolution "conditioned" Plaintiff's appointment upon "passing a background check and being bonded by the City of Highland Park and

the County of Wayne." (ECF No. 1-3, PageID.28.) The resolution stated that the bond "shall be set at $2,000,000." (*Id.* at PageID.28.)

Plaintiff alleges that no other elected or appointed official of the City "is bonded in any amount nor ha[s] any other elective or appointed official been required to secure a bond in any amount." (ECF No. 10, PageID.128, ¶ 24.) Plaintiff alleges that McDonald, Williamson, and at least two members of the City Council "stated publicly that they would enforce a high bond requirement to prevent Plaintiff . . . from assuming office in retaliation for Plaintiff . . . allegedly conspiring with community activist Robert Davis to have the former City Treasurer . . . ousted from office." (*Id.* at PageID.129, ¶ 30.) She alleges that the high bond requirement was levied "in retaliation for Plaintiff . . . speaking out about . . . alleged corruption and misconduct." (*Id.* at PageID.129, ¶ 31.)

Plaintiff "attempted to procure a $2 million surety bond, but was unsuccessful." (*Id.* at PageID.128, ¶ 26.) Her inability to obtain a $2 million bond was addressed at a City Council meeting on April 15, 2024. (*See id.* at PageID.128, ¶ 27; ECF No. 1-4, PageID.36–38.) The Council resolved to reduce the bond amount to "an amount in excess of $500,000, and not to exceed $2,000,000." (ECF No. 1-4, PageID.37.)

Mayor McDonald vetoed the Council's resolution, however, and reinstated the requirement that Plaintiff obtain a $2 million bond. (*See* ECF No. 10, PageID.129, ¶ 29.) In documenting her veto, McDonald indicated that she objected to the Council "approv[ing]" a lower bond on grounds that the Council could "set" but had no authority to "approve[]" any bond. (ECF No. 1-5, PageID.47.)[2] Plaintiff alleges that McDonald issued this veto due to (i) her "personal animus and hatred . . . towards Plaintiff," (ii) Plaintiff's criticisms of McDonald's allegedly "corrupt and unethical conduct," and (iii) Plaintiff's alleged affiliation with Robert Davis. (ECF No. 10, PageID.130, ¶ 37; *id.* at PageID.131, ¶ 39.)

---

[2] Defendants submitted a copy of McDonald's initial veto (dated April 19, 2024) with their reply brief. (*See* ECF No. 20-2, PageID.227–228.) The same document also includes a "revised" veto dated April 22, 2024. (*Id.* at PageID.232–233.) The revised version of the veto is also reflected in Plaintiff's submission of the Proposed Minutes of the Virtual & In-Person Regular Meeting of the Highland Park City Council for a meeting that proceeded on May 6, 2024. (*See* ECF No. 1-5, PageID.47.) The proposed minutes of the May 6 meeting indicate that three members of the council voted to override the veto. (*Id.*) Section 6-3 of the City Charter provides that the City Council can override a veto if at least four members of the Council vote to do so. (ECF No. 20-3, PageID.237–238.) The Court takes judicial notice of the existence of these public records. *See Blackwell v. Nocerini*, 123 F.4th 479, 487–88 (6th Cir. 2024) ("[W]e . . . allow district courts to take judicial notice of 'public records' without converting a motion to dismiss into a summary-judgment motion. . . . This exception, though, generally allows a court to conclude only that the record exists; the exception does not allow the court to treat all information in the record as true." (citations omitted)).

Plaintiff alleges that Mayor McDonald "unlawfully ordered that Plaintiff . . . not be allowed into the Treasurer's office and ordered the Highland Park Police Department not to allow Plaintiff . . . access to the Treasurer's office." (*Id.* at PageID.129–130, ¶ 32.) McDonald also allegedly "threatened to have Plaintiff arrested if she attempted to access the Treasurer's office inside of the Highland Park City Hall." (*Id.* at PageID.130, ¶ 33.) Plaintiff alleges that she stopped trying to access the office and assume the duties of Treasurer after the mayor threatened to have her arrested. (*Id.* at PageID.130, ¶ 36.)

On October 27, 2024, Plaintiff filed this lawsuit against the City, City Council, and Mayor McDonald. (*See* ECF No. 1.) Her complaint alleges that the requirement to post a bond in the amount of $2 million denied Plaintiff equal protection under the law. (*See id.* at PageID.3.)

Plaintiff also ran for and was elected to serve as the Highland Park Treasurer in the November 5, 2024 general election. (ECF No. 10, PageID.131, ¶¶ 41–42.)[3] On November 18, 2024, the City Council approved a resolution that required the "City Administration to exercise

---

[3] The position to which Plaintiff was elected expires on December 31, 2026. (*Id.* at PageID.131, ¶42.)

best efforts and due diligence to acquire a 'blanket bond' for the City Treasurer and Deputy Treasurer positions." (*Id.* at PageID.132, ¶ 44.) The resolution allegedly further stated that, in the event the City was unable to procure a "blanket bond," the "Treasurer-elect" would be required to procure a $5 million bond, allegedly to "safeguard the community's tax levy revenues." (*Id.* at PageID.132, ¶ 45.) The requirement to obtain a bond was allegedly imposed solely on the "Treasurer-elect"; no such requirement was imposed on the Deputy Treasurer. (*Id.* at PageID.132, ¶ 46.)[4]

Plaintiff alleges that the resolution enacted on November 18, 2024 was submitted to the City Council "at the behest and direction of Defendant McDonald." (*Id.* at PageID.132, ¶ 44.) She claims that the resolution was enacted by the Council "in retaliation against the Plaintiff

---

[4] Plaintiff did not submit a copy of the November 2024 City Council resolution with her pleadings. The resolution is made available on Highland Park's website, however. *See* Resolution Regarding Approval of Bond for the Office of City Treasurer (Nov. 18, 2024), *in* Minutes of the Virtual & In-Person Regular Meeting of the Highland Park City Council on Monday, November 18, 2024 (p. 29 of 31), *available at* https://www.highlandparkmi.gov/media/220bchcx/241118m.pdf. The resolution acknowledges that "Lisa Stolarski was elected to the office of Highland Park Treasurer on November 5, 2024" and imposes a requirement for the "Treasurer-elect" to obtain a $5 million bond if the City is unable to obtain a "'blanket bond' for the City Treasurer and Deputy Treasurer positions." The Court takes judicial notice of the existence of this resolution. *See Blackwell*, 123 F.4th at 487–88.

for filing [a] federal lawsuit in October 2024 and for Plaintiff speaking out against Defendants McDonald and Williamson for their alleged corruption and misconduct." (*Id.* at PageID.133, ¶ 48.)

Plaintiff took office as Treasurer on November 25, 2024. (*Id.* at PageID.134, ¶ 52.) She alleges that, since she assumed office, "Defendants McDonald, Williamson, and City of Highland Park, individually and collectively, have obstructed and prevented Plaintiff . . . from exercising **ALL** of the duties of the office of City Treasurer." (*Id.* at PageID.134, ¶ 53 (emphasis in original).) These Defendants allegedly prevented Plaintiff from accessing the financial system used by the City (*id.* at PageID.134, ¶ 54); refused to add Plaintiff "as a signer on all accounts for the Defendant City, which [Plaintiff claims] is required under the city charter and state law" (*id.* at PageID.134, ¶ 55); and prevented Plaintiff from "accepting payments from residents . . . made at the cashier window of the City Treasurer's office located in city hall" (*id.* at PageID.134, ¶ 56). Plaintiff alleges that Defendants are retaliating against her for filing this lawsuit, her affiliation with Robert Davis, and her public criticism of certain of the Defendants for their alleged "corrupt and unethical behavior." (*Id.* at PageID.135, ¶ 58.)

## B.   Procedural History

As noted above, Plaintiff filed this lawsuit on October 24, 2024. (*See* ECF No. 1.) Plaintiff filed an Amended Complaint on January 31, 2025. (*See* ECF No. 10.) The Amended Complaint includes the following claims for relief, each of which is asserted against all Defendants:

- Count I: A claim of First Amendment retaliation brought under 42 U.S.C. § 1983. Plaintiff claims that Defendants retaliated against her for speaking publicly against certain Defendants, associating with activist Robert Davis, and filing her federal lawsuit. (*Id.* at PageID.125–138, ¶¶ 12–71.)

- Count II: A claim brought under state law that seeks the issuance of a declaratory judgment "[p]ursuant to Mich. Ct. R. 2.605" finding that Defendants are legally barred from obstructing or preventing Plaintiff from exercising all of the duties of her office. (*Id.* at PageID.138–143, ¶¶ 72–93.)

- Count III: A claim brought under state law that seeks the issuance of a declaratory judgment "[p]ursuant to Mich. Ct. R. 2.605" finding that Defendants lack the legal authority to require a Plaintiff to obtain a $5 million bond and have a "legal duty" to procure a "blanket bond" to cover all City officials. (*Id.* at PageID.143–147, ¶¶ 94–109.)

Defendants moved to dismiss the Amended Complaint on March 4, 2025. (ECF No. 16.) The motion is fully briefed. (*See* ECF No. 19, 20.) The undersigned referred the motion to Judge Grand for an R&R. (*See* ECF No. 17.) Judge Grand held a hearing on the motion on June 2, 2025. (See ECF No. 27 (transcript).) Judge Grand explained at the conclusion of the

hearing why he intended to recommend that Defendants' motion be denied. (*See id.* at PageID.273–284.) Judge Grand memorialized his recommendation in an R&R issued on June 3, 2025, that cites the reasons he stated during the hearing. (*See* ECF No. 25.)

Defendants filed five objections to the R&R on July 7, 2025. (ECF No. 28.)[5] Plaintiff filed a response on July 21, 2025. (ECF No. 29.)[6]

## II.   Legal Standard

A party may object to a magistrate judge's report and recommendation, and a district judge must resolve proper objections under a de novo standard of review. *See* 28 U.S.C. § 636(b)(1)(B)–(C); Fed.

---

[5] The deadline to object to the R&R was extended by the stipulation of the parties and with the approval of the Court. (*See* ECF No. 26.)

[6] On November 20, 2025, Defendants filed a Notice of Supplemental Authority (ECF No. 34) to which they attached a November 15, 2025 resolution by the Board of Commissioners for Wayne County, Michigan (where Highland Park is located). (*See* ECF No. 34-1.) The resolution states that Wayne County will appoint an employee to "perform the tax collection duties for the City of Highland Park," purportedly due to the failure of the "City of Highland Park Treasurer . . . to secure and post a bond." (*Id.* at PageID.354.) The resolution indicates that the requirement to "post a surety bond" was created by the "Highland Park City Charter" and "MCL 211.43(2)." (*Id.*) Defendants assert that this resolution is "germane to this case because the crux of Plaintiff's lawsuit is Defendants 'have obstructed and prevented Plaintiff Stolarski from exercising ALL of the duties of the office of City Treasurer as set forth under the Highland Park City Charter and state law.'" (ECF No. 34, PageID.350–351.) Plaintiff did not file a response to the notice. The Court gives this notice no weight in its analysis, as its relevance to the pending motion is not apparent.

R. Civ. P. 72(b)(1)–(3). "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that restate arguments already presented to the magistrate judge are improper, *see Coleman-Bey v. Bouchard*, 287 F. App'x 420, 422 (6th Cir. 2008) (citing *Brumley v. Wingard*, 269 F.3d 629, 647 (6th Cir. 2001)), as are those that are vague and dispute the general correctness of the report and recommendation, *see Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id.* (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, the objections must be clear and specific enough to permit the Court to squarely address them on the merits. *See Pearce*, 893 F.3d at 346.

11

## III.  Analysis

As noted, the R&R recommends that Defendants' motion to dismiss be denied. (ECF No. 25.) Defendants raise five objections to the R&R. (ECF No. 28.) The Court addresses each objection below. The Court finds that the objections fail.

### A.   Objection No. 1: First-Amendment Retaliation Claim

Defendants first object to Judge Grand's conclusion that Plaintiff sufficiently alleged a claim of retaliation in violation of the First Amendment. (ECF No. 28, PageID.291–293.)

A claim for retaliation under the First Amendment requires a plaintiff to demonstrate three elements: (1) the plaintiff engaged in constitutionally protected speech; (2) the plaintiff was subjected to an adverse action that would deter a person of ordinary firmness from continuing to engage in the protected speech; and (3) the adverse action was motivated at least in part by the plaintiff's protected speech. *See Ryan v. Blackwell*, 979 F.3d 519, 526 (6th Cir. 2020) (considering a motion to dismiss a First Amendment retaliation claim).

During the hearing on Defendants' motion, Judge Grand concluded that there was no dispute that Plaintiff had engaged in constitutionally

12

protected speech. (ECF No. 27, PageID.253–254, PageID.276.) He further concluded that Plaintiff had adequately alleged at least two types of adverse actions: (i) Defendants conditioning her initial appointment as Treasurer on her ability to post a $2 million bond and (ii) Defendants requiring Plaintiff to post a $5 million bond after she was elected Treasurer. (*Id.* at PageID.275–277.) He then found that Plaintiff had adequately alleged a causal connection between her speech and the decisions to require her to post multi-million-dollar surety bonds. (*Id.* at PageID.254–260, PageID.277, PageID.278–279.)

In their first objection to the R&R, Defendants argue that "Plaintiff has not alleged conduct that can allow this Court to draw a reasonable inference that Defendants are liable for retaliation." (ECF No. 28, PageID.292.) They point to the fact that Plaintiff engaged in protected speech (presumably her criticism of Mayor McDonald and others) *before* "Defendants appointed Plaintiff to her position" in early 2024. (*Id.*) They appear to be arguing that this order of events precludes Plaintiff from stating a claim because she would not have been appointed as the Treasurer if her speech played a role in their decision-making process.

13

This argument was already raised before and rejected by Judge Grand. (*See* ECF No. 27, PageID.255–256.) The Court agrees with Judge Grand that the fact that Plaintiff was appointed does not preclude her from prevailing on her theory that Defendants sought to prevent her from assuming the office following this appointment by imposing a requirement (obtaining a $2 million bond) that they knew she could not meet. (*See, e.g.,* ECF No. 10, PageID.129, ¶ 31.) Further, Plaintiff's retaliation claim is not based solely on events surrounding Plaintiff's initial appointment; it is also based, among other things, on a resolution that was enacted in November 2024, after she filed a federal lawsuit in October 2024. (*See id.* at PageID.133, ¶ 48.) Defendants do not address the full scope of Plaintiff's allegations in their objection.

Defendants also argue that they "required Plaintiff to obtain a bond in order to protect the City from financial losses and to ensure that Plaintiff ethically and lawfully managed the City's funds." (ECF No. 28, PageID.292.) This argument was also raised before and rejected by Judge Grand. (*See* ECF No. 27, PageID.257–258.) The Court agrees with Judge Grand that this is not a proper argument for a motion to dismiss given

that the Court must accept the complaint's factual allegations as true when reviewing a motion to dismiss under Rule 12(b)(6). (*See id.*)

Finally, Defendants argue that the retaliation claim is "moot and hypothetical" because "Plaintiff is currently serving as the City Treasurer and is permitted to perform her Charter-dictated duties." (ECF No. 28, PageID.293.) Defendants do not provide a citation to support this assertion.[7] Even if this were true, however, it would not moot Plaintiff's retaliation claim or render it hypothetical. Plaintiff seeks a declaratory judgment that she was retaliated against and seeks monetary damages, punitive damages, compensatory damages, costs, fees, and any other appropriate relief. (*See* ECF No. 10, PageID.138.) At a minimum, these aspects of the claim remain viable even if some of the alleged retaliatory conduct ended at a later date.

In sum, Defendants do not demonstrate that Judge Grand erred in recommending that the Court find that Plaintiff states a plausible claim

---

[7] During the June 2025 hearing, after Judge Grand noted Plaintiff's allegation that she had been "locked out of doing the . . . job" (ECF No. 27, PageID.253), Defendants' counsel stated that there "was a short time period that that was true, but that's all been rectified today, and I think she—they would not dispute that." (*Id.*) Defendants' counsel also stated later in the hearing that "it's undisputed that at this time, she is in office and getting all the benefits." (*Id.* at PageID.260.) Plaintiff's counsel did not respond directly to either statement.

15

of retaliation in violation of the First Amendment (Count I). Further, Defendants' first objection raises arguments that were already considered and rejected by Judge Grand. *See Coleman-Bey*, 287 F. App'x at 422. Accordingly, Defendants' first objection is overruled.

## B.     Objection No. 2: Legislative Immunity

In their second objection, Defendants object to Judge Grand's conclusion that legislative immunity should not be found to attach at this stage of the case. (*See* ECF No. 28, PageID.293–295.)

"Individual members of local governmental bodies . . . are absolutely immune from suit for damages under § 1983 when conducting 'legitimate legislative activity.'" *Anders v. Cuevas*, 984 F.3d 1166, 1181 (6th Cir. 2021) (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998)). The Sixth Circuit has identified two factors that are "relevant to determine whether a government official's acts fall within the sphere of legitimate legislative activity.'" *Id.* (citing *Bogan*, 523 U.S. at 54). "First, [a court] must consider whether a defendant's actions were legislative in form, *i.e.*, whether 'they were integral steps in the legislative process.'" *Id.* (quoting *Bogan*, 523 U.S. at 55). "Second, [a court] must ask whether a defendant's actions were 'legislative in substance,' *i.e.*, whether the

actions 'bore all the hallmarks of traditional legislation,' including whether they 'reflected . . . discretionary, policymaking decision[s] implicating the budgetary priorities' of the government and the services the government provides to its constituents." *Id.* at 1181–82 (quoting *Bogan*, 523 U.S. at 55–56).

A defendant who claims legislative immunity bears the burden of demonstrating that he or she is entitled to immunity. *See id.* at 1181 (citing *Canary v. Osborn*, 211 F.3d 324, 328 (6th Cir. 2000)). Where, as here, a defendant moves to dismiss a complaint based on purported legislative immunity, a court must limit its consideration to the plaintiff's allegations and must construe these allegations in favor of the plaintiff (*i.e.*, the non-moving party). *See id.* at 1182 (citing *Bogan*, 523 U.S. at 54).

Judge Grand relied on *Anders v. Cuevas*, 984 F.3d 1166 (6th Cir. 2021) to conclude that discovery is needed to determine whether any Defendants were entitled to legislative immunity. (ECF No. 27, PageID.277–278.) *Cuevas* involved a lawsuit filed by a towing company and its owner against officials of the City of Taylor, Michigan. *See id.* at 1171. The plaintiffs filed suit after the city's mayor vetoed a city council resolution that would have given the towing company a three-year

17

contract to serve as the exclusive provider of towing services for the city. *See id.* at 1172. The plaintiffs alleged that the mayor exercised the veto because the towing company's owner had "refused to give [the mayor] campaign contributions" and had "provided information to the FBI and U.S. Attorney's office about [the mayor's] conduct." *Id.*

The mayor in *Cuevas* argued that the claims against him should be dismissed because his veto was covered by legislative immunity. *See id.* at 1181. The Sixth Circuit concluded that, while there was no dispute that the veto was legislative "in form," "discovery is necessary before we can determine whether the veto was legislative in substance." *Id.* at 1182. The court observed that the plaintiff's allegations, when construed in the light most favorable to the plaintiff, "suggest that [the mayor's] veto was nothing more than an attempt to stop the city from contracting with one specific entity—Area Towing." *Id.* It reasoned that "[s]uch a pointed act does not indicate a larger policy goal or budgetary concern and appears more administrative than legislative in character." *Id.*[8]

---

[8] *Cuevas* cites several cases that collectively suggest that legislative immunity does not attach to activities pertaining to a single, specific individual or entity rather than the community more broadly. *See* 984 F.3d at 1182 (citing *Bogan*, 523 U.S. at 56 (noting that the hiring or firing of a particular employee is generally not "legislative in substance" whereas terminating a position might be); *Canary*, 211 F.3d at 330–31

The Court agrees with Judge Grand that *Cuevas* is "very much on point." (ECF No. 27, PageID.277–278.) Plaintiff's lawsuit arises out of City Council resolutions (and a mayoral veto) that collectively require one specific city official (Plaintiff) to obtain multi-million-dollar surety bonds as a condition of taking office. (*See, e.g.*, ECF No. 1-3, PageID.28; ECF No. 1-5, PageID.47; ECF No. 10, PageID.132, ¶ 45.) Plaintiff alleges that she is the only Highland Park official who the Council has required to personally obtain a surety bond prior to assuming office. (ECF No. 10, PageID.128, ¶ 24; *id.* at PageID.132, ¶ 46; *id.* at PageID.135, ¶ 60.) Plaintiff also alleges that Defendant McDonald and others took steps to prevent Plaintiff from assuming office and exercising the duties of her office, such as threatening to have her arrested and depriving her of access to the City's accounts. (*See id.* at PageID.129–130, ¶¶ 32–33; *id.* at PageID.134, ¶¶ 53–56.) These allegations, viewed in the light most favorable to Plaintiff, suggest that Defendants' activities were not

---

(concluding that a board's decision not to renew a particular individual's contract as an assistant principal was not legislative in substance because the decision involved a personalized assessment and did not have broader implications for the community); *Guindon v. Twp. of Dundee*, 488 F. App'x 27, 33 (6th Cir. 2012) (concluding that the denial of a building permit is an administrative act whereas the passage of a zoning ordinance would be a legislative act)).

19

"legislative in substance" because they singled out a particular individual (Plaintiff) rather than setting policy for the community more generally.

In objecting to Judge Grand's recommendation with respect to legislative immunity, Defendants insist that they were performing "legislative activities" when "conditioning [Plaintiff's] appointment as Treasurer." (ECF No. 28, PageID.294–295.) They do not, however, address the Sixth Circuit's holding in *Cuevas*, even though Judge Grand specifically relied upon that decision to conclude that Defendants have not yet established that they are entitled to legislative immunity. (*See* ECF No. 27, PageID.277–278.)

In sum, Defendants' second objection raises arguments that were already considered and rejected by Judge Grand. (*Compare* ECF No. 16, PageID.182–183, w*ith* ECF No. 27, PageID.277–278.) *See Coleman-Bey*, 287 F. App'x at 422. The Court agrees with Judge Grand's conclusion that the individual Defendants have not established that their activities, as pled in the Amended Complaint, are covered by legislative immunity. Accordingly, Defendants' second objection is overruled.

## C.    Objection No. 3: Qualified Immunity

In their third objection, Defendants contend that Judge Grand erred in denying their motion to dismiss based on qualified immunity. (*See* ECF No. 28, PageID.295–297.)[9]

Qualified immunity is an affirmative defense to § 1983 claims. When properly invoked, "qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). If a defendant asserts qualified immunity, the plaintiff bears the burden of showing that the defendant is not entitled to qualified immunity. *Guertin v. Michigan*, 912 F.3d 907, 917 (6th Cir. 2019) (citing *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011)). To meet this burden, the plaintiff must show "(1) that the official

---

[9] Defendants characterize Judge Grand as "finding that Plaintiff satisfied her burden that Defendants were not entitled to a qualified immunity defense." (ECF No. 28, PageID.295.) That characterization is, at a minimum, incomplete. Judge Grand stated during the hearing on Defendants' motion that Plaintiff "has done enough to . . . satisfy her burden *at this stage*" with respect to qualified immunity. (ECF No. 27, PageID.282 (emphasis added).) He did *not* state that Plaintiff had satisfied her burden for the entirety of the case such that Defendants would be barred from raising the issue at a later stage of the case.

violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

Where, as here, a defendant raises qualified immunity in a motion to dismiss, "the question for the court is whether the plaintiff has plausibly alleged that the defendant violated a clearly established constitutional right." *Hodges v. City of Grand Rapids*, 139 F.4th 495, 504 (6th Cir. 2025) (citing *Marvoso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020)). "Qualified immunity is . . . resolvable at the motion-to-dismiss stage" but only "'when the *complaint* establishes the defense.'" *Id.* at 505 (quoting *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 762 (6th Cir. 2020)).

Judge Grand recommended declining to dismiss claims against individual Defendants based on the qualified-immunity defense, observing that "the law is very clear that the Government employer cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." (ECF No. 27, PageID.280 (citing *Perry v. McGinnis*, 209 F.3d 597 (6th Cir. 2000)).) Judge Grand also quoted a 2016 decision out of the Eastern District of Michigan in which the court observed that: "By 2012, several

22

Sixth Circuit decisions had held that a government official could not permissibly jeopardize or otherwise threaten a citizen's employment [(]or even future employment[)] in retaliation for the citizen exercising his or her First Amendment rights." (ECF No. 27, PageID.281–282 (quoting *Davis v. Robert*, 192 F. Supp. 3d 847, 860 (E.D. Mich. 2016)).)

The Court agrees with Judge Grand's thorough recommendation and declines to dismiss the claims against individual Defendants based on qualified immunity. As set forth above, Plaintiff has stated a plausible claim that Defendants retaliated against her based on her criticism of public officials, her (alleged) association with a community activist, and her filing of a federal lawsuit in which she objected to her treatment by certain Defendants. "[I]t is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983." *Cuevas*, 984 F.3d at 1185 (quoting *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997)). Citizens have a clearly established right to criticize public officials without facing retaliation. *See id.* at 1184–85 (affirming denial of motion to dismiss based on qualified immunity); *see also Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010) ("The filing of a lawsuit to redress grievances is

23

clearly protected activity under the First Amendment." (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999))).

In raising their third objection, Defendants nowhere distinguish the cases that were cited by Judge Grand or with other case law addressing qualified immunity for First Amendment retaliation claims. (*See* ECF No. 28, PageID.295–297.) Rather, they assert generally that Plaintiff "has not identified the clearly established law that would put Defendants on notice of their lawful conduct." (*Id.* at PageID.296.) This objection is too vague and general to merit serious consideration. *See Miller*, 50 F.3d at 380 (explaining that a party that objects to a magistrate judge's report and recommendation may not rely on vague objections that merely dispute the general correctness of the report and recommendation).

In sum, Judge Grand did not err in finding that the individual Defendants are not entitled to qualified immunity at this stage of the case based on the allegations in the Amended Complaint. Accordingly, Defendants' third objection is overruled.

### D.    Objection No. 4: *Monell* Claim

In their fourth objection, Defendants argue that Judge Grand erred in concluding that Plaintiff states a viable *Monell* claim against Defendant City of Highland Park. (*See* ECF No. 28, PageID.297–298.)

"[A] local government [such as the City of Highland Park] may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). A plaintiff who asserts a claim against a municipality under § 1983 must therefore "demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 690). "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

25

Defendants' argument focuses on whether Plaintiff has asserted a *Monell* claim based on Defendant McDonald's April 2024 veto of a City Council resolution that would have reduced the size of the bond that Plaintiff would be required to secure. (*See* ECF No. 20, PageID.222–223; ECF No. 27, PageID.261–262; ECF No. 28, PageID.298.) That narrow focus is puzzling given that Plaintiff's retaliation claim addresses a broad swath of conduct that includes, in addition to this veto, (i) the initial City Council resolution that required Plaintiff to personally secure a $2 million bond; (ii) the City Council's November 2024 resolution that required Plaintiff to personally secure a $5 million bond in the event the City could not secure a "blanket bond"; and (iii) actions taken by Mayor McDonald and Finance Director Williamson to allegedly prevent Plaintiff from accessing her office and performing her official duties as the City's Treasurer.[10]

---

[10] Plaintiff's own briefing did not help to re-focus this issue. Rather than identifying the City Council's *resolutions* as official acts that could support municipal liability, Plaintiff pointed to aspects of the "Highland Park City Charter" that "empower[]" the City Council to "selectively require an elected official to secure and acquire a surety in any amount." (ECF No. 19, PageID.207–209.) Plaintiff also asserted that the Charter "grants the . . . mayor . . . veto power with respect to certain resolutions." (*Id.* at PageID.209.) During the hearing, Plaintiff's counsel clarified that Plaintiff is challenging how Defendants went about exercising the authority granted by the Charter and not just the Charter itself. (*See* ECF No. 27, PageID.267–270.)

The resolutions enacted by the City Council undoubtedly qualify as "official policy or legislative enactment[s]" of the City. (*See* ECF No. 20-3, PageID.237 (excerpt of Section 6-1 of the Highland Park City Charter stating that "[a]ll powers of the City shall be vested in the City Council, except as otherwise provided by law or by this Charter, and the City Council shall provide for the exercise thereof by ordinance, resolution or otherwise . . . .").) "No one has ever doubted . . . that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body . . . because even a single decision by such body unquestionable constitutes an act of official government policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *see also Saieg v. City of Dearborn*, 641 F.3d 727, 742 (6th Cir. 2011) (holding that the City of Dearborn "may be held liable for the restriction of [the plaintiff's] free speech rights that [a] leafleting restriction [imposed by the police department] caused" because the City Council passed a resolution to approve a plan to host a festival "subject to . . . the rules and regulations of the Police Department"); *Perkins v. Twp. of Clayton*, 411 F. App'x 810, 813–14 (6th Cir. 2011) (agreeing with the district court that a township faced potential liability under § 1983 for any unlawful resolutions

27

enacted by its Board of Trustees because the "Township's legislative authority is vested in the Board").

Because Plaintiff has plausibly alleged a *Monell* claim against the City of Highland Park with respect to, at a minimum, the City Council's March 2024 and November 2024 resolutions that established the requirement for Plaintiff to secure multi-million-dollar surety bonds, the Court need not decide at this time whether Plaintiff has specifically alleged a basis for holding the City liable for Mayor McDonald's April 2024 veto of a City Council resolution that attempted to reduce the size of the bond that Plaintiff would be required to secure.[11]

---

[11] The current record does not provide a sufficient basis on which to resolve the issue of whether the City could be held liable specifically for Defendant McDonald's veto. Defendants argued for the first time in their reply brief that the Mayor's veto cannot serve as a basis for municipal liability under *Monell* because the City Council is empowered to override such a veto. (*See* ECF No. 20, PageID.222–223.) Defendants did not cite any Sixth Circuit decisions to support this argument. Moreover, the Supreme Court decision they cite in support of this argument (*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)) discusses the general considerations that apply when determining whether an official exercises final decision-making authority and does not address whether *Monell* liability could be based on a single official's veto. *See id.* at 124–27. During the June 2025 oral argument, Plaintiff's counsel noted that overriding the Highland Park mayor's veto requires votes from four of the five members of the City Council and, thus, "the ability to override that veto . . . isn't necessarily available because of the super majority." (ECF No. 27, PageID.270–272.) Plaintiff's counsel did not, however, provide Judge Grand with authority supporting this "super majority" distinction as part of his argument. Judge Grand ultimately suggested that this issue was better addressed at summary judgment. (*See id.* at

28

In sum, Defendants have not shown that Judge Grand erred in concluding that Plaintiff stated a plausible claim for *Monell* liability against the City of Highland Park based on at least some of the conduct alleged in the Amended Complaint. (*See* ECF No. 27, PageID.272, PageID.282–283.) Defendants' objection does not identify how Judge Grand erred and instead repeats arguments that Defendants made before the magistrate judge. (*See* ECF No. 28, PageID.298.) *See Coleman-Bey*, 287 F. App'x at 422 (explaining that objections to an R&R should not restate arguments that were already presented to the magistrate judge). Accordingly, Defendants' fourth objection is overruled.

### E.    Objection No. 5: Denial of Motion to Dismiss

In their fifth objection, Defendants state that they "oppose [the] decision to deny the Motion to Dismiss" and contend that the motion should be granted "[b]ased on the arguments above." (ECF No. 28, PageID.299.) This objection does not provide a basis to reject the R&R and, therefore, it is overruled. *See Miller v. Currie*, 50 F.3d 373, 380 (6th

---

PageID.272.) The Court agrees that this issue is best deferred to a later stage of the case in light of the incomplete record and argument on this issue.

Cir. 1995) (explaining that a party who objects to an R&R may not merely dispute its "general correctness").[12]

## IV.   Conclusion

For the reasons set forth above, Defendants' objections (ECF No. 28) are OVERRULED. Judge Grand's recommendation (ECF No. 25) to deny Defendants' motion to dismiss is ADOPTED for the reasons Judge Grand set forth on the record at the June 2, 2025 hearing (*see* ECF No. 27) along with those stated in this Opinion and Order. Defendants' motion to dismiss (ECF No. 16) is, therefore, DENIED.

IT IS SO ORDERED.

Dated: June 4, 2026                              s/ Judith E. Levy
    Ann Arbor, Michigan                    JUDITH E. LEVY
                                   United States District Judge

---

[12] In their fifth objection, Defendants also ask the Court to decline to exercise supplemental jurisdiction over Counts II and III (which Plaintiff styles as state-law claims) in the event that it dismisses the claim for retaliation in violation of the First Amendment alleged in Count I. (ECF No. 28, PageID.299.) There is no basis to reach this issue because the Court is not dismissing Count I.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 4, 2026.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager

31